# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 09 C 3489 | **DATE** | 11/23/2010 |
| **CASE TITLE** | Wright vs. City of Chicago et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set out below, Defendants' Motion for a Protective Order to Limit the Extent of Discovery [67] is granted. Defendants will not be required to answer Interrogatories 14, 18, 20, 21 and 22, and will not be required to respond to Document Requests 10, 15, 19 and 29 through 43, inclusive. This is without prejudice to any specific objection defendants may have made regarding any other interrogatory or document request. Any such specific objections are not the subject of this order.

■[ For further details see text below.]

Notices mailed by Judicial staff.
*Copy to judge/magistrate judge.

## STATEMENT

Plaintiff Shawn Wright's Fifth Amended Complaint alleges 28 counts against certain police officers and the City of Chicago arising out of four incidents in 2008 and 2009. [Dkt 49.] Included in the complaint are civil rights and state law claims against the individual defendants and the City, and four *Monell* claims against the City (Counts 7, 13, 23 and 28). Defendants' motion seeks to limit discovery on those *Monell* claims.

In summary, Wright's Fifth Amended Complaint alleges the following. Wright was arrested on July 22, 2008, for a Municipal Code violation for which the penalty is a fine and not incarceration, and his car was impounded. He was released the next day. Eventually the charges were dismissed and the City was ordered to refund Wright the amount of $600 that he had paid for towing and storage of his car. A similar scenario played out on June 22, 2009. Wright was again taken into custody for a Municipal Code violation, and his car was impounded. He was released the same day. The ticket was dismissed. He alleges that officers who arrested him on the second occasion were from the same police district (the 24th District) as the officers who previously arrested him and that they did so in retaliation for his success in having his earlier citation dismissed. On July 13, 2009, Wright was again arrested by one of the same officers and Wright's car was again impounded. He was cited for a Municipal Code violation but also charged with resisting arrest. Wright spent three days in jail, and was found not guilty. On August 15, 2009, Wright was arrested by another officer of the 24th District for possession of marijuana, and his car was again impounded. The misdemeanor charge against him was dropped but he was found liable for a Municipal Code violation in an administrative hearing and ordered to pay $1,620 for possessing marijuana in a car.

Wright's *Monell* claims are pled in very broad terms. For example, he alleges in Count 7:

¶ 34. The unlawful arrest, prosecution, use of force and impoundment of his vehicle was the result of the policy, practice and custom of the City of Chicago to inadequately supervise and

| STATEMENT |
|---|

discipline law enforcement officers who use excessive force and false imprisonments.

. . .

¶ 36. The policy, practice and custom of the City of Chicago is that when police officers use excessive force or make false arrest/imprisonment or unlawfully seize their property, ie. (*sic*) cars, and malicious prosecution other officers do not intervene to prevent the use of the illegal actions, do not arrest the officer engaging in the illegal activity, and do not report the illegal activity.

. . .

¶ 40. The policy, practice and custom of the City of Chicago to allow police officers to engage in excessive force and falsely arrest, imprison citizens and unlawfully seize their possession, i.e., their vehicles has a long history.

(Fifth Am. Compl.) The other *Monell* claims are virtually identical.

In denying the City's motion to bifurcate the case, the District Judge said, "The claims in this case directly implicate policies of the City itself, in terms of impoundment of vehicles and administrative hearings. There are also numerous officers and a supervisor allegedly involved in various incidents." (Order, June 22, 2010.) [Dkt 62.]

Wright has served very broad discovery requests. For example, Interrogatory 20 asks the identity of every Chicago police officer who has been the subject of an internal affairs or Office of Professional Standards or other investigation for police brutality, false imprisonment, malicious prosecution, assault and battery, improper impoundment of vehicles and § 1983 complaints from 2004 to present. (Defs.' Mot., Ex. A.) That interrogatory further asks, "Were any of the identified officers placed on administrative leave or disciplined, if so, who, when, what were the terms and where were they placed after being disciplined?"[1]

Wright has served 43 document requests which are also very broad. For example, Document Request 32 seeks "[a]ll records relating to other suits filed against the City of Chicago and/or its police officers related to accusations of false arrests, false imprisonment, police brutality, malicious prosecution, assault and battery, improper vehicle impoundments, false ticketing, and planting of evidence." (Defs.' Mot., Ex. B.) Document Request 34 seeks all investigative files from 2004 to 2009 for all civilian abuse complaints against City of Chicago police officers. (*Id*.) Document Requests 38 and 42 seek records comparing the disciplinary rates of Chicago police officers to other cities, and records related to police officer whistleblowers.

In his response to defendants' motion, Wright argues that his *Monell* claims attack the "widespread custom and practice of police misconduct and code of silence which has been allowed to continue despite numerous lawsuits." (Pl.'s Resp. at 2.) [Dkt 70.] Apparently, Wright believes that his *Monell* claims permit him to litigate what he believes is the ineffectiveness of the police disciplinary system for all types of misconduct. Through his discovery, Wright wants to investigate what he believes to be the failure of the disciplinary system for police officers in connection with any types of civilian complaints from 2005 to the present.

The District Judge has directed this court to set appropriate limits on discovery that will provide Wright with reasonable discovery on the *Monell* issues raised by the complaint but will not overwhelm the City. (Order, Sept. 29, 2010.) [Dkt 72.] The first step in that process is to delineate what *Monell* claims are, in fact, raised by

| STATEMENT |
|---|

Wright's complaint.

It is important to recall that the primary holding of *Monell v. Dept. of Social Services of New York*, 436 U.S. 658 (1978), is that a municipality cannot be held vicariously liable for civil rights violations committed by its employees. A municipality can be liable for monetary damages under § 1983 if the unconstitutional act complaint of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized is widespread and well settled; or (3) an official with final policy making authority. *Monell,* 436 U.S. at 690-91.

> A governmental body's policies must be the *moving force* behind the constitutional violation before we can impose liability under *Monell*. In §1983 actions, the Supreme Court has been especially concerned with the broad application of causation principles in a way that would render municipalities vicariously liable for their officers' actions.

*Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 306 (7th Cir. 2010) (citations omitted, emphasis in original).

Wright's claims against the City cannot be as broad as alleging failure to supervise or discipline police officers in general, because that would be, in effect, alleging a negligence claim against the City, which is unavailable under *Monell*. Nothing of that breadth is suggested by the District Judge's order, which refers to "policies of the City itself, in terms of impoundment of vehicles and administrative hearings." (Order, June 22, 2010). Instead, Wright's *Monell* claims must be limited to policies and practices that are the *moving force* behind the specific constitutional violations allegedly inflicted on Wright.

The court concludes that Wright's complaint implicates policies, procedures and practices of the City relating to:

(a) arrests in connection with Municipal Code violations for which no imprisonment is authorized;

(b) impoundment of vehicles in connection with Municipal Code violations for which no imprisonment is authorized;

(c) proceeding by way of administrative hearings when more serious charges have been brought and dismissed.

Wright will be permitted to take reasonable discovery of the City on those subjects. In addition, Wright may take discovery on the disciplinary history of the defendants. He may also take reasonable discovery directed to learning if claims of similar misconduct have been brought in the past against officers assigned to the 24th District.

The discovery Wright has served goes beyond information relevant to whether City policies were the "moving force" behind the constitutional violations allegedly committed by the individual defendants. The City will not be required to answer interrogatories or respond to document requests that seek information about disciplinary practices in general or the investigations of complaints of police misconduct that is not focused on the particular practices at issue here.

Defendants' motion is granted and defendants will not be required to answer Interrogatories 14, 18, 20,

| STATEMENT |
|---|
| 21 and 22, and will not be required to respond to Document Requests 10, 15, 19 and 29 through 43, inclusive. This is without prejudice to any specific objection defendants may have made regarding any other interrogatory or document request. Any such specific objections are not the subject of this order. |

1. Wright's interrogatories exceed the 25 interrogatories including discrete subparts permitted by Federal Rule of Civil Procedure 33(a)(1). For example, Interrogatories 17, 20 and 21 each contain at least four discrete questions.